UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>)<br>GUSTAVO KINRYS, )<br>)<br>Defendant ) | Criminal No. 1:20-cr-10307-DJC |

**GOVERNMENT'S RESPONSE TO THE DEFENDANT'S MOTION
<u>IN LIMINE</u> TO EXCLUDE EVIDENCE OF DEFENDANT'S TAX FRAUD**

On September 17, 2023, the Government provided notice to the defendant of its intention to introduce, pursuant to Federal Rule of Evidence 404(b), evidence that the Defendant, Gustavo Kinrys, filed tax returns for the years 2015 through 2017 that, cumulatively, omitted in excess of $3 million in income. Dkt. No. 130-1. Kinrys seeks to exclude this evidence because, he claims, it is irrelevant and because the danger of unfair prejudice outweighs whatever relevance the evidence might have. Defendant is wrong on both points.

As the government explained in its 404(b) notice, it intends to introduce this evidence to show Kinrys' knowledge of the wrongfulness of his conduct, his unlawful intent, and the absence of mistake and lack of accident or good faith. These are appropriate and permissible uses of this evidence pursuant to Rule 404(b).

### BACKGROUND

As alleged in the indictment, from 2015 through 2018, Kinrys billed insurers for over $10 million dollars' worth of medical treatments that he never provided, including:

(1) billing for over 26,000 transcranial magnetic stimulation ("TMS") treatments (each of which requires sitting in a dentist-like chair at Kinrys's office in Natick, MA) when

1

> he in fact provided fewer than 6,000 such sessions (Dkt. No. 1, Indictment ¶ 19) (hereinafter "Ind. ¶ __");
>
> (2) billing for TMS treatments and psychotherapy treatments to patients who were out of the country when he supposedly provided those services (Ind ¶ 43(a-d));
>
> (3) billing for face-to-face psychotherapy sessions when his patients were *in* the United States but Dr. Kinrys was traveling *outside* the United States to places like the Bahamas (February 2017), Zurich (July 2017), or Punta Cana in the Dominican Republic (Ind. ¶¶ 44-48);
>
> (4) billing for TMS treatments to individuals like his wife, for whom he billed over 400 sessions despite her never receiving a *single* TMS session (Ind. ¶¶ 42(a-g)); and
>
> (5) billing for 24 hours or more of psychotherapy sessions in a single day – something Kinrys did over over 380 times between 2015 and 2018 (Ind. ¶ 51).

The indictment alleges that insurers paid Kinrys over $3.7 million for services like those described above that he never provided. Ind. ¶ 41.

When Medicare and private insurers began asking questions about Kinrys' billings, the indictment alleges, he provided them with fabricated medical documentation. Ind. ¶¶ 34, 52, 53. Later, when the Department of Health and Human Services, Office of Inspector General ("HHS-OIG") sent Kinrys a subpoena seeking patient medical files, Kinrys created false medical documentation and directed his office workers to create false medical documentation, which he then provided to HHS-OIG in response to the subpoena. Ind. ¶¶ 58-63.

Health insurance companies, relying on the validity of Kinrys' claims, paid out millions of dollars to Kinrys and then, as required by the Internal Revenue Service ("IRS"), sent IRS Form 1099s documenting these payments both to Kinrys (through his billing company, SBSC, Inc.)[1] and to the IRS itself.

---

[1] An employee of SBSC, Inc. sat for a Rule 15 deposition on September 6, 2023 and confirmed that she forwarded these 1099 Forms to Kinrys's home.

Rather than accurately reporting the amounts documented on the insurers' Form 1099s as income on his own tax filings, Kinrys grossly underreported these amounts—to the tune of more than $3 million.

## ARGUMENT

Based on questions counsel for Kinrys asked at a Rule 15 deposition on September 6, 2023, Kinrys appears likely to argue that the false bills submitted to insurers were not *intentional* falsehoods, but instead errors of inadvertence and mistake made by a busy, careless doctor whose strongsuit was not paperwork. Evidence that Kinrys hid and underreported his income shows – and is probative of – his intent and his knowledge that his scheme to overbill insurers was wrongful. That evidence also rebuts the likely defense argument that Kinrys's overbilling was inadvertent or the result of an unintentional mistake, because the same person who was supposedly making sloppy *unintentional* billing mistakes to insurers was making *intentional* decisions to underreport the specific amounts of income he was receiving from those insurers.

For these reasons – and contrary to Kinrys's assertions – courts admit evidence of underreported income in fraud cases involving allegations like those set forth in the indictment. In *United States v. Lesniewski*, 11-CR-01091, 2013 WL 3776235, at *7-8 (S.D.N.Y. July 12, 2013), for example, two defendants were charged with conspiring to commit health care fraud and mail fraud (and substantive offenses of health care fraud and mail fraud) in connection with a scheme to defraud the United States Rail Road Board. The defendants sought to bar the government from introducing evidence that the defendants underreported their income under Rule 404(b). In admitting the tax return evidence, the Court explained that the evidence demonstrated the defendant's "distorting of his income [was] probative of his lack of mistake or accident and his intent to defraud the RRB." *Id.* at *7-8. In response to the defendants'

argument that the evidence would be unduly prejudicial under Rule 403 or "convert the trial into a separate proceeding charging tax fraud"—the same argument that Kinrys makes here—the Court reasoned that any concerns about either prejudice or improper uses could be addressed through a limiting instruction. *Id.* at *8.

Other courts addressing underreported income evidence in fraud cases have reached similar conclusions, admitting the evidence to prove knowledge of wrongdoing and absence of mistake. In *United States v. Fuchs*, 218 F.3d 957, 965 (9th Cir. 2000), a jury convicted two defendants of conspiring under 18 U.S.C. § 371 to facilitate an unlawful exchange program involving aircraft tankers that generated over $400,000 in revenue for one of the defendants. *Id.* at 960. At trial, the government presented, and the district court admitted, the tax return evidence to show that the defendant "had knowledge that the exchange program was unlawful." After trial, the defendant appealed. The Ninth Circuit ruled that the tax return evidence was admissible under Rule 404(b) where it could make the existence of the defendant's knowledge more probable than it would be without the evidence: "Proof that [the defendant] attempted to hide income that he received as a result of the exchange program could reasonably indicate that he knew the program was unlawful." *Id. See also United States v. Yang*, No. 16-CR-00334, 2019 WL 5536213, at *8 (N.D. Cal. Oct. 25, 2019) (denying motion to exclude tax returns underreporting defendants' income because "tax returns may be admissible to show 'knowledge' under Rule 404(b)" but deferring ruling on which tax return would be admissible under the rule); *United States v. D'Arco*, No. 90-CR-01043, 1991 WL 264503, at *6 (N.D. Ill. Oct. 9, 1991) (holding evidence of split fee arrangement admissible after the government argued that "hiding money from the IRS by splitting fees with [co-defendant] and an unnamed lobbyist[] is probative of [defendant's] intent or consciousness of guilt").

Rule 404 explicitly approves of the use of evidence of other criminal or wrongful acts to demonstrate the lack of mistake. The Government expects Kinrys to argue that his overbilling was the result of someone who was careless or did not pay enough attention to his billing process or the millions of dollars paid to him by insurers. The Government expects the tax return evidence to show the opposite: Kinrys received specific 1099 forms from insurers he billed that cited a specific amount of income. Kinrys then worked with a tax preparer, who the government expects will testify that she took the specific amounts from Kinrys's 1099 forms and inputted them into Kinrys's tax return. Those specific amounts, however, were less than what was identified in Kinrys's 1099 forms from the insurers. The Defendant's motion suggests that the Government's will ask the jury to "speculate" the Kinrys "failed to provide the account with *all* of the 1099s that the insurers issue[d]." Dkt. No 130 at 2. But that is not accurate. The Government instead intends to show that specific 1099 amounts from specific insurers were falsely reported by Kinrys. That false reporting, the Government submits, would show a lack of mistake and a level intentionality with respect to underreporting on his tax forms income received from a fraud.[2]

If Kinrys is going to be permitted to present or elicit evidence that he was busy, or sloppy, or careless when it came to financial matters like billing, the Government should be

---

[2] The way in which the Government intends to use the 1099s and Kinrys's tax return also renders Kinrys's constitutional argument irrelevant. Whether or not Kinrys's third party biller sent Kinrys all the 1099s she received is irrelevant. If the Government intended to show that the total amount of the 1099s was underreported, the question of whether the biller sent Kinrys all the 1099s (which she testified she did) might be more relevant. Where, however, the Government intends to show that a 1099 form from hypothetical Insurer A identified $200,000 in income but Kinrys's tax return reflected that the 1099 form from Insurer A showed $100,000 (i.e., much less), whether each and every 1099 form was sent to Kinrys is less relevant. The Government intends to show that Kinrys falsified or mis-stated the amounts on *specific* 1099 forms – not that he provided one large sum to his tax preparer that was less than the total sum of all the individual 1099 forms.

In any event, in the Government's direct examination of the third-party biller (pursuant to Rule 15) and the biller's prior sworn testimony, the Government asked numerous questions about how the biller forwarded to Kinrys's home the 1099s from insurers. Kinrys had ample notice about the 1099 forms and ample opportunity to ask questions about them.

permitted to introduce evidence that Kinrys received 1099s and then had the attention, the intent, and the understanding of those financial documents sufficient to then underreport the amounts on those 1099 Forms to his tax preparer.

Respectfully submitted,

JOSHUA S. LEVY
Acting United States Attorney

Dated: September 28, 2023

/s/ *Patrick Callahan*
Christopher R. Looney
Patrick M. Callahan
Assistant United States Attorneys

## CERTIFICATE OF SERVICE

      Undersigned counsel certifies that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

                                                     */s/ Patrick Callahan*
                                                     Patrick Callahan
                                                     Assistant United States Attorney

Dated: September 28, 2023