UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES OF AMERICA <br><br> v. <br><br> GUSTAVO KINRYS, <br><br> Defendant | **PUBLIC VERSION** <br><br> Criminal No. 1:20-cr-10307-DJC |

### GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR RELEASE PENDING SENTENCING

The Government submits this opposition to Defendant Gustavo Kinrys's Motion for Release (Dkt. 223). Kinrys contends that a psychiatric evaluation performed by Dr. Stuart Gitlow (the "Gitlow Evaluation"), which is based almost entirely on an hour of Kinrys's self-reporting, constitutes "new evidence" that shows by clear and convincing evidence that he is not likely to flee and that he does not "pose a danger to the safety of any other person or the community." 18 U.S.C. §3143(a)(1). The Government disagrees. The Gitlow Evaluation is incomplete and flawed. Even if it were neither of those things, it would not change the facts on which the Court based its November 16, 2023 order remanding Kinrys pending his April 23, 2024 sentencing. The Court should deny Kinrys's motion.

### BACKGROUND

On October 24, 2023, a jury convicted Kinrys on charges of wire fraud, false statements relating to health care matters, and obstruction. On that same date, following the verdict, the Government moved to detain Kinrys pending sentencing under 18 U.S.C. §3143(a)(1) based on the presumption of detention, the amount of time Kinrys was facing under the Sentencing

1

Guidelines, and concerns about the possibility that Kinrys would engage in self-harm. The Court denied that motion at that time. *See* 11/16/23 Tr. at 33-34.

On November 15, 2023, the Government renewed its motion to detain Kinrys based on additional information, including nonprivileged statements and communications from Kinrys that raised concerns about (1) his potential to engage in self-harm, and (2) his threatening behavior towards his trial attorney, Aaron Katz, and the AUSAs who tried the case against him. *See* 11/15/23 Govt Motion for Detention Pending Sentencing (filed under seal).

In granting the Government's motion, the Court first observed that the standard governing whether to release or detain a defendant after conviction "shifts to the defendant to show by clear and convincing evidence he's not likely to flee or pose a danger to the safety of any other person or the community." *See* 11/16/23 Tr. at 33. The Court found persuasive the line of cases holding that self-harm appropriately fell under the likelihood of a defendant to flee,[1] *see id.*, and then stated that it was relying on nonprivileged information in the record concerning "threats that were made in regards to members of the prosecution team and Dr. Kinrys's former counsel, Mr. Katz," 11/16/23 Tr. at 35. The Court then highlighted a November 2, 2023 Kinrys e-mail titled "Guns and Lies," in which Kinrys wrote – in regards to the prosecution team – "Karma is a bitch." 11/16/23 Tr. at 35; *see also* Ex. E at 2. Noting that § 3143(a) did not make a distinction between a veiled threat versus an actual threat, the Court noted its concern for Kinrys's potential to engage in self-harm and his mental instability:

> I'm concerned about the stability of the defendant in regards to self-harm, and I think that I was making reference to is Dr. Kinrys' -- I understand by profession he is but I think what his mental health is in terms of some of the

---

[1] *See United States v. Metz*, 2012 WL 6632501, at *4 (W.D.N.Y. Dec. 12, 2012) ("18 U.S.C. § 3142(f)(2)(A) also authorizes a detention hearing 'upon the judicial officer's own motion, in a case that involves ... a serious risk that [defendant] will flee.' Although defendant argues that "risk of suicide is not risk of flight", I disagree." (internal citation omitted)).

> language that has been used in threats is of particular concern to this Court, particularly in light of a reluctance to perhaps be independently evaluated until today when perhaps the question of remand was more sharply in view. So, for all of those reasons, I am going to remand.

11/16/23 Tr. at 36.

On February 14, 2024, citing the Gitlow Evaluation as "new information," Kinrys moved for his release pending his sentencing. Dkt. 223; Ex. A, 2/12/24 Gitlow evaluation.

## DISCUSSION

The only new information Kinrys offers to justify his release from pre-sentence custody – the Gitlow Evaluation – is not sufficient to allow him to meet his burden of showing by clear and convincing evidence that he "is not likely to flee or pose a danger to the safety of any other person or the community." *See* 18 U.S.C. §3143(a). This is particularly so given the evidence already in the record. The Gitlow Evaluation, as described below, is incomplete and flawed. Even if the Gitlow Evaluation were neither of those things, it still would not be enough to tip the scales in favor of Kinrys's release – particularly where Kinrys is facing a guideline range in excess of 200 months in custody.

**A.    Legal Standard Governing Pre-Sentencing Release**

Section 3143(a) of title 18 of the United States Code governs a defendant's release pending sentencing. It states in relevant part:

> (1) Except as provided in paragraph (2), the judicial officer shall order that a person who has been found guilty of an offense and who is awaiting imposition or execution of sentence ... be detained, unless the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c). If the judicial officer makes such a finding, such judicial officer shall order the release of the person in accordance with section 3142(b) or (c).

18 U.S.C. § 3143(a)(1); *see also United States v. Krilich,* 178 F.3d 859, 860–62 (7th Cir. 1999) (citing *United States v. Holzer,* 848 F.2d 822 (7th Cir.1988)). The legislative history underlying §3143(a) explains that "[t]he reason for not imprisoning a convicted defendant (unless he is likely to flee or is a public menace) before he is sentenced is that the sentence may not be a sentence of imprisonment, or may be a sentence for a shorter period of imprisonment than the interval between conviction and sentencing; or that the defendant needs some time to get his affairs in order...." *Holzer,* 848 F.2d at 824.  According to the statutory language, there is a clear presumption in favor of detention pending sentencing. *See* 18 U.S.C. § 3143(a)(1); *United States v. Manso–Portes,* 838 F.2d 889, 889–90 (7th Cir.1987); *United States v. Marks,* 947 F. Supp. 858, 863 (E.D. Pa. 1996). To overcome this presumption, a defendant must present clear and convincing evidence that he is not likely to flee and that he is not a public menace. *See* 18 U.S.C. § 3143(a)(1); *Holzer,* 848 F.2d at 824; *see also Manso–Portes* 838 F.2d at 889–90 (ruling that either a risk of flight or a public danger requires denial of pre-sentence release).  Release is allowed only on a showing of such evidence, and any release must be in accordance with 18 U.S.C. §§ 3142(b) or (c). *See* 18 U.S.C. § 3143(a)(1).

**B.     Factors Supporting Kinrys's Continued Pre-Sentence Detention**

The Government's November 15, 2023 Amended Motion to Reconsider the Court's October 24, 2023 Order on Detention focused on five pieces of evidence that favored detaining Kinrys pending his sentencing.  The Government summarizes those pieces of evidence below.

   **1.     Attorney Katz's conversation with John Worthington about Kinrys's potential for self-harm.**

Dr. Worthington informed Katz that that he (Worthington) had "concerns" about Kinrys's his potential for self-harm if he was found guilty.  11/15/23 Govt Motion at 3.

4

### 2. Worthington statements on October 24, 2023 that Kinrys might try to kill himself if found guilty and that he had guns

Worthington made the following statements to the Government on October 24, 2023: (i)

██████████████████████████████████████████

████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████

██████████████████████████████

████████████████████████████

██████████████████████████████████

████████████████████ Ex. B at 1-2, 4 (10/24/23 John Worthington MOI).

Worthington also provided the back and forth ████████████████

████████████████████████████

██████████████████████████████████

██████████████████████████████████

████████████████████████████



Ex. C at 1-2, 4 (10/24/23 John Worthington Text Message Excerpts).

    **3.**    **Attorney Katz's statements to the Government on November 13, 2023 that Katz had concerns for the safety of himself, his family, and the prosecution team.**

Attorney Katz spoke to the Government on November 13, 2023 and expressed fear that Kinrys might harm him if the Government followed through on its intention to inform the Court of Attorney Katz's earlier statement that he was concerned Kinrys might engage in self-harm. Attorney Katz expressed extreme concern for his own safety and the safety of his family if Kinrys learned of Attorney Katz's conversation with the Government. In expressing this concern, Attorney Katz presented as agitated, scared and panicked. That evening, Attorney Katz went to the home of a senior prosecutor in the U.S. Attorney's office, entered that prosecutor's home, and expressed his concern for his safety to the wife of that senior prosecutor. Attorney Katz also told that senior prosecutor's wife that members of the prosecution team could be at risk. *See* 11/15/23 Govt Motion to Remand at 3-4.

### 4. Attorney Katz's November 14, 2023 statements to law enforcement, while accompanied by personal counsel, about his concern for the safety of others.

Attorney Katz told the Government again on November 14, 2023 that the prosecution team could be at risk and that he was in fear for his own safety, and the safety of his family. ▉

████████████████████████████████████████████▉

████████████████████████████████████████████▉

██████████████████████████████████▉

    ████████████████████████████████████████▉

    ████████████████████████████████████▉

    ██████████████████████████████████▉

    ████████████████████████████████████████▉

Ex. D at 2-3 (11/14/23 Katz Interview).

### 5. Non-privileged communications from Kinrys to Attorney Katz and between Attorney Katz and his associate.

In response to a Court order, Attorney Katz produced emails from Kinrys in which Kinrys ████████████████████████████████████████▉

████████████████████████████████████████████▉

████████████████████████████████████████████▉

████████████████████████████████████████████▉

████████████████████████████████████████████▉

████████████████████████████████████████████▉



### 6. Attorney Katz's *ex parte* statements to the Court on November 14, 2023 about Kinrys's behavior.

The five factors discussed above favor the Court keeping Kinrys in custody pending his April 23, 2024 sentencing. Kinrys has engaged in threatening behavior and is a danger to himself and the community, including his attorney and members of the prosecution team. His attorneys – who spent many hours with him at trial and after – confirmed that.

It is important to bear in mind, however, the evidence described above – including the written communications from Kinrys himself – ***does not even*** take into account what Kinrys conveyed orally to Attorney Katz and his associate. That is important context. Attorney Katz said it was critical that Kinrys's written statements be understood and viewed in the context of the contemporaneous oral conversations he was having with his client. Attorney Katz appears to have conveyed some of those nonprivileged conversations to the Court during the November 14, 2023 *ex parte* proceeding where the Government had been excused and only Attorney Katz and

his counsel were present. In Kinrys's Motion for Release, he cites liberally to the transcript of that November 14, 2023 *ex parte* proceeding. *See* Dkt. 223 at 9-12 (referring to the sealed transcript to which the Government does not have access). From those citations, it is clear that Attorney Katz – the individual who had spent the most time with Kinrys – discussed his client's mental stability, his client's threatening behavior, and his understanding that Kinrys's "plan was never to spend a day in prison if he had to take it into his own hands." Dkt. 223 at 11 (Motion for Release citing *ex parte* transcript at 6).

Kinrys has access to that November 14, 2023 *ex parte* transcript; the Government does not. The Government requests that the Court provide it with access to the non-privileged portions of that *ex parte* proceeding. In the context of Kinrys's Motion for Release, the Government is at a distinct disadvantage when Kinrys is able to cite to and rely on the portions of that *ex parte* proceeding he believes are favorable to his position, while the Government has no ability to balance those arguments or fully assess them by looking at the portions of the transcript that may support the Government's position.

The Government believes its request for the nonprivileged portions of the transcript is appropriate. After all, "not all communications with a lawyer are privileged." *United States v. Sabri*, 973 F. Supp. 134, 140-41 (W.D.N.Y. 1996) (noting that Defendant's alleged statements to attorney regarding use of violence to effect political change or to exact personal revenge were not related to legal advice and, as such, were not protected by attorney-client privilege). While Kinrys repeatedly argues that Attorney Katz violated the attorney-client privilege by speaking with the Government and/or the Court, he makes no effort to carry his burden of proving that the privilege applies. Dkt. 223 at 16-19 (Motion for Release contending "all attorney client privilege evidence should be suppressed"). It doesn't. Courts have been clear that threats are not

protected by the privilege because threats are not communications directed at obtaining legal advice. *See United States v. Ivers*, 2018 WL 11025541, at *4 (D. Minn. June 26, 2018), aff'd, 967 F.3d 709 (8th Cir. 2020) ("[T]hreats to commit violent acts against ... others [a]re clearly not communications in order to obtain legal advice" and are not privileged); *United States v. Alexander*, 287 F.3d 811, 816 (9th Cir. 2002) ("[Defendant's] threats to commit violent acts against Werner and others were clearly not communications in order to obtain legal advice."). Here, the people who had spent the most time with Kinrys are Attorney Katz and his law associate. Attorney Katz's account of nonprivileged statements from Kinrys should be available to the Government and should be considered as evidence for the Court's decision about whether Kinrys should remain in custody pending his sentencing.

C.  **Defendant's "New Information" – The Gitlow Evaluation – is incomplete and flawed.**

Defendant contends that the Gitlow Evaluation[2] – "new information" in his words – tips the scales in favor of his release. A close read of that evaluation, however, demonstrates that it is incomplete and insufficient to justify Kinrys's release. Even if everything in the Gitlow Evaluation was true, it would still not be sufficient for Kinrys to carry his burden under 18 U.S.C. § 3143(a)(1).

As an initial mater, the five-page Gitlow Evaluation is based almost entirely on a single, one-hour telephone conversation between Dr. Gitlow and Kinrys. Among other shortcomings, the Gitlow Evaluation reveals that:

- Gitlow did not consult any medical records concerning Kinrys' mental health or physical health.

---

[2] It is not clear whether the defense had any other experts or mental health providers perform and evaluation of Kinrys. If there are additional mental health evaluations of Kinrys that have been performed, the Government believes the Court should have access to them.

10

- Gitlow did not consult anyone other than Kinrys and Dr. Worthington – not Kinrys's wife, not his colleagues, not any past health care providers, not his mental health provider-colleagues with whom he'd worked at MGH for years.

- Critically, Gitlow did not speak with any of Kinrys's former employees, many of whom told Government investigators – long before Kinrys's conviction – that they feared him.

- In supposedly assessing Kinrys's "dangerousness," Dr. Gitlow failed to use any of the standard, well-known risk assessment tools directed to that inquiry, such as the Violence Risk Appraisal Guide-Revised ("VRAG-R") or the Historical Clinical Risk Management–20-Version 3 ("HCR–20-v3") and instead relied only on Kinrys's self-reporting.[3]

- Dr. Gitlow did not speak with anyone who was the object of Kinrys's threatening behavior, such as Attorney Katz.

- Dr. Gitlow based his ultimate conclusion, in part, on the fact that, during his hour-long telephone conversation with Kinrys, Kinrys made no threats towards him (Gitlow).

- Dr. Gitlow concluded – based solely on the reporting of Kinrys himself – that Kinrys had "no history of violence".

Ex. A, Gitlow Evaluation.

Essentially, Dr. Gitlow spoke to the one person with the most interest in Kinrys not being found unstable or dangerous – **Kinrys** himself. And there is nothing in the Gitlow Evaluation indicating that its author did *anything* to corroborate Kinrys's self-reporting. With the exception of a 10-15 minute conversation with Dr. Worthington discussed further below, Dr. Gitlow failed to contact any other person with whom Kinrys has interacted in his 53 years on earth. If Gitlow had taken the basic step of speaking with people with whom Kinrys worked day-to-day over the last 10 years, he would have learned ████████████████████████████████████████

████████████████████████████████

---

[3]   *See United States v. Mahoney*, 53 F. Supp. 3d 401, 412, 415-416 (D. Mass. 2014) (finding a respondent dangerous under 18 U.S.C. § 4246 where the government bore the burden of proving dangerousness and relying on the following risk assessment tools: VRAG, HCR-20 and PCLR-R ; "[R]isk assessment tools are widely used in the field, have been peer reviewed, and have been generally accepted in court").

11



Dr. Gitlow's failure to consult any of these individuals is glaring and counsels in favor of disregarding conclusory opinions contained in his evaluation.

While Dr. Gitlow did have one, 10-15 minute conversation with Dr. Worthington, it appears that he simply used that conversation to attempt to minimize what Dr. Worthington had previously told to the Government about Kinrys's ██████████████████

██████████████ As the Court will recall from the Government's November 15, 2023 motion to detain Kinrys, Dr. Worthington told investigators that: ████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████

████████████████████

During Dr. Gitlow's brief conversation with Dr. Worthington, he did not ask about Kinrys's bad temper, ███████████████████████████████████████ ███████████████████████ He also failed to ask Worthington about how Kinrys treated Worthington or his employees. Critically, Dr. Gitlow chose to ignore or not include in his evaluation the fact that Worthington had relayed to Gitlow that "████████████ ████████████████████████████████████████████████ █████████████████████████████████

Given the shortcomings described above and, in particular, Gitlow's near exclusive reliance on one hour of self-reporting by Kinrys, the Gitlow Evaluation falls far short of what is required to justify Kinrys's release pending his April 23, 2024 sentencing. Even with the assistance of the Gitlow Evaluation – incomplete as it is – Kinrys still cannot carry his burden of proving by clear and convincing evidence that he "is not likely to flee or pose a danger to the safety of any other person or the community." 18 U.S.C. § 3143(a). As the Court acknowledged at the November 16, 2023 hearing, there is no requirement that the Government show that Kinrys made a specific threat to another specific person in order for the presumption codified in § 3143(a)(1) to apply. See 11/16/23 Tr. at 35 ("COURT: Again, I think the government is right, actual versus – actual versus veiled threat perhaps doesn't – the distinction doesn't matter for

---

⁴ The Government interviewed Dr. Worthington *after* his brief phone call with Dr. Gitlow. See Ex. L (2/22/24 Worthington Interview).

§ 3143(a), but I have concerns not just about Dr. Kinrys' potential for self-harm, his mental health….").

Here, the two individuals who have spent significant amounts of time with Kinrys – and far more time than the one hour spent by Dr. Gitlow – raised the risk of self-harm: (1) his attorney, Attorney Katz, who sat with him through two weeks of trial, spent hours with him at his home, and spent six months working with Kinrys to prepare for his October 2023 trial, and (2) his longtime friend and 20+ year professional colleague, Dr. Worthington, who went to a shooting range with Kinrys, received photos of guns from Kinrys, and whom Kinrys told about his purchase of guns. The information from these two individuals "demonstrates a likelihood to flee or poses a danger to the safety of the community for purposes of § 3143(a)(1)." *United States v. Taylor*, No. CR21-193RSM, 2023 WL 1928167, at *2 (W.D. Wash. Feb. 10, 2023) (affirming decision to remand defendant pre-sentence in case where there was a risk of suicide); *United States v. Drake*, 2021 WL 1600485 (D. Ind. 2021) (citing *United States v. Cody*, 498 F.3d 582, 591 (6th Cir. 2007) (recognizing it is "logical" to "treat suicide as a form of flight")).

D. **Kinrys's claim that he needs to prepare his family for his incarceration does not warrant his pre-sentence release.**

Finally, Kinrys claims he needs to be released pre-sentence to allow him the opportunity to assist his wife and daughters in preparing for his incarceration. Such an argument is unpersuasive under the circumstances at play here. First, Kinrys has been under indictment for 3 years - since December 2020. He had two different trial dates – October 2022 and May 2023 – that were moved after he decided to terminate his attorneys immediately before trial. Kinrys had plenty of time to get his affairs in order. He chose not to. *See United States v. Hanhardt*, 173 F. Supp. 2d 801, 807 (N.D. Ill. 2001) (rejecting the need to "transition [] family affairs" as a basis for pre-sentence release where convicted defendant had faced indictment for over a year and had

14

moved his trial date).   Second, it is not even clear that Kinrys has focused on spending time getting his family acclimated since his conviction.  The record shows that he is "on Nantucket constantly," which is consistent with his having to be summoned to Court on November 16, 2023 from Nantucket.  Third, Kinrys had from October 24 to November 16, 2023 to make any arrangements he needed.  Moreover, he has been incarcerated for three months – from November 2023 to late February 2024.  By now, Kinrys's family has had time to acclimate to the changed circumstances of its household.

The Government acknowledges, and can appreciate, the difficulties families may go through when a loved one is convicted of a crime and sentenced to prison. While incarceration undoubtedly causes strain on both Kinrys and his family, that is the nature of incarceration. When an individual commits a crime, goes to trial, is convicted by a jury, and is placed in custody, it is not uncommon – and not unanticipated – that there are collateral consequences.  "It is a sad truth that incarceration is often harder on family members than on the defendant him or herself.  … There will always be personal reasons that make the timing of prison challenging." *United States v. Kapoor*, 16-CR-10343-ADB (D. Mass. Mar. 30, 2021) Dkt. 1446, Order (denying in part motion to continue report date).  Kinrys chose to engage in the bold, brazen $19 million fraud that has landed him in prison.  He chose to take that risk while a father to two young daughters.  He has known about the prospect of incarceration for years.  He cannot now – three years post-indictment – be heard to complain that he has not had enough time to prepare to serve his sentence.

## CONCLUSION

Because Kinrys cannot carry his burden of proving by "clear and convincing evidence that he is not likely to flee or … pose a danger to the safety of any other person or the

community," the Court should deny his Motion for Release. 18 U.S.C. §3143(a)(1). Kinrys should continue to be detained pending his April 23, 2024 sentencing. The Government also requests that it be provided access to any non-privileged portions of the transcript of the ex parte November 14, 2023 proceeding involving Attorney Katz.

                                                Respectfully submitted,

                                                JOSHUA S. LEVY
                                                Acting United States Attorney

Dated: February 27, 2024                 */s/ Patrick Callahan*
                                                PATRICK M. CALLAHAN
                                                CHRISTOPHER R. LOONEY
                                                Assistant United States Attorneys